UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| AMERICAN WESTERN HOME | ) | |
| INSURANCE CO., | ) | |
| | ) | CASE NO. 4:06-cv-8 |
| *Plaintiff*, | ) | |
| | ) | |
| | ) | MAGISTRATE JUDGE LEE |
| v. | ) | |
| | ) | |
| CARROLL R. LOVEDY, SR., and | ) | |
| SMOKEHOUSE, INC., | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM and ORDER

### I.     Introduction

In this action for declaratory judgment brought pursuant to 28 U.S.C. § 2201, Plaintiff

American Western Home Insurance Co. ("Plaintiff") filed a motion for judgment on the pleadings

[Doc. No. 11].  Defendant Smokehouse, Inc. ("Smokehouse") filed a response in opposition to

Plaintiff's motion [Doc. No. 17], and Plaintiff filed a reply [Doc. No. 20].  Defendant Carroll R.

Lovedy, Sr. ("Lovedy") filed no responsive pleading to Plaintiff's motion for judgment on the

pleadings, but did file a motion seeking an order allowing him and his counsel to be excused from

the November 7, 2006 hearing on Plaintiff's motion stating Lovedy takes no position on Plaintiff's

motion [Doc. No. 22].

A hearing on Plaintiff's motion was held on November 7, 2006.  Present at the hearing

were: 1) Attorney Christopher H. Crain for Plaintiff and 2) Attorney Michael D. Hall for

Smokehouse.  At the hearing, the parties were given the opportunity to file supplemental briefs on

the issue of whether the claims in the underlying action constitute an "occurrence" as defined in the policy. Both Smokehouse and Plaintiff filed a supplemental brief [Doc. Nos. 24, 25], and Plaintiff's motion is now ripe for review.

For the reasons that follow, the Court will **GRANT** Plaintiff's motion [Doc. No. 11] and **DECLARE** that Plaintiff has no duty to defend or to indemnify Smokehouse with regard to the claims brought by Lovedy in the underlying litigation pending in this Court, *Lovedy v. Jim Oliver's Smokehouse Restaurant, et al.*, No. 4:05-CV-44 (E.D. Tenn.) (the "underlying litigation").

## II.    The Underlying Litigation

On July 2, 2005, a complaint was filed in the underlying litigation by Lovedy alleging Smokehouse[1] violated his rights under the Americans with Disabilities Act, 42 U.S.C. §§ 12101-213 ("ADA"), and the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-103 ("TCPA") [Doc. No. 1-1]. Lovedy alleges Smokehouse was and is the owner/operator of a public accommodation that on its website advertised it had "all the up-to-date conveniences to make your stay most comfortable . . . The lodge is newly remodeled with 85 oversized rooms." [Doc. No. 1-1, at 2, ¶ 4]. Lovedy alleges Smokehouse discriminated and continues to discriminate against him by denying him "access to, and denying full and equal enjoyment of goods, services, facilities, and/or benefits" at their place of business in violation of the ADA [*id.* at 3, ¶ 11]. Lovedy alleges he suffered an injury because Smokehouse is a "pubic accommodation facility" that "denies, limits, marginalizes, restricts, impedes, and/or impairs [him] in enjoying full and safe access to the public

---

[1] The allegations in the underlying litigation refer to the defendant as Jim Oliver's Smokehouse Restaurant, Smokehouse Trading Post, and Smokehouse Lodge. It is undisputed the insured, Smokehouse, Inc. operates its motel and restaurant business under the name Jim Oliver's Smokehouse Restaurant, Smokehouse Trading Post and Smokehouse Lodge.

accommodation's programs, privileges, advantages, benefits and services" [*id.* at 3, ¶ 12]. Lovedy alleges Smokehouse discriminated against him as a result of various facility and access barriers, including: steep, blocked, and inaccessible ramps and pathways and insufficient markings and signage for disabled parking [*id.* at 4, ¶ 14].

Lovedy also alleges violations of the TCPA based upon the aforementioned statements allegedly from the Smokehouse website. Lovedy alleges that, despite the representations on its website, the Smokehouse made the knowing choice "not to make its facilities, programs and services accessible to" him [*id.* at ¶ 37]. Lovedy alleges such actions by Smokehouse "constitutes an 'unfair or deceptive act or practice'" within the meaning of the TCPA [*id.* at ¶ 38].

## III.     **Declaratory Judgment**

Plaintiff brought this action for declaratory judgment to determine if it has a duty to defend or to indemnify Smokehouse in the underlying litigation pursuant to the Commercial General Liability Insurance policy, number Q61002538 (the "Policy"), issued by Plaintiff to Smokehouse as its insured [Doc. No. 1-1]. The Declaratory Judgment Act provides a court "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C § 2201 (emphasis added); *accord Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004) (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942)). This statutory discretion is broad, but not unbounded.

The Sixth Circuit Court of Appeals ("Sixth Circuit") provides specific guidance regarding whether to hear a declaratory judgment claim, stating the district courts should consider:

> (1) whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose

in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).

The district court also considers three additional factors expressed by the Supreme Court in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). The factors, which serve to refine the federalism-focused inquiry under the fourth factor of the above test, are: (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory action. *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000).

The factors set forth above apply in those situations where there is a parallel or underlying state court proceeding to the declaratory judgment action. *See, e.g.*, *id*; *Employer's Fire Ins. Co. v. Danis Building Construction Co.*, No. 99-3987, 2000 WL 1234321, * 2 (6th Cir. Aug. 22, 2000). There is, however, no requirement that a parallel proceeding be pending in a state court before a federal court should decline to exercise jurisdiction over a declaratory judgment action. *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 423 (4th Cir. 1998).[2]

---

[2] The parties have not presented argument about the applicable factors or cited a case where the Sixth Circuit has addressed the situation where, as here, the parallel or underlying action is proceeding in the same federal court as the declaratory judgment action.

Balancing the relevant factors, the Court finds they weigh in favor of exercising jurisdiction over this declaratory judgment action. There is no parallel or underlying state court action and there is no indication there is likely to be an underlying or parallel state court action. As there is no underlying or parallel state court proceeding, there is little or no risk of conflicting or inconsistent state and federal rulings. There is no indication that allowing this declaratory judgment action to proceed would result in piecemeal litigation or that Plaintiff is using this declaratory judgment action to engage in either procedural fencing or forum shopping. Although this declaratory judgment action will not resolve the underlying litigation, it will further the underlying litigation by clarifying Plaintiff's obligations to Smokehouse in the underlying litigation. While not determinative, the Court also notes neither party objects to the Court's exercise of jurisdiction over this declaratory judgment.

It is settled a "declaratory judgment action is an appropriate avenue to determine whether an insurer has a duty to defend or indemnify an insured." *TIG Ins. Co. v. Merryland Childcare and Development,* No. 04-2666 B, 2005 WL 1923115, * 2 (W.D. Tenn. Aug. 4, 2005) (quoting *NGK Metals Corp. v. National Union Fire Ins. Co.*, No. 1:04-CV-56, 2005 WL 1115925, * 2 (E.D. Tenn. Apr. 29, 2005)). Accordingly, having considered the factors set forth above both individually and weighing them as a whole, the Court **ACCEPTS** jurisdiction over Plaintiff's declaratory judgment action.

## IV.    <u>Analysis</u>

Plaintiff states it has provided Smokehouse with a defense under a reservation of rights and now seeks a judgment declaring it has no duty to defend or to indemnify Smokehouse for the claims made by Lovedy in the underlying litigation [Doc. No. 11 at 4]. Plaintiff also asserts

there are no factual disputes concerning the provisions of the Policy and argues the claims made by Lovedy in the underlying litigation are not covered by the Policy as matter of law [*id.* at 5-8].

Smokehouse does not challenge Plaintiff's assertion that there are no factual disputes [Doc. Nos. 17, 18]. Instead, Smokehouse asserts the Policy covers loss of use of property and asserts Lovedy has alleged such a loss of the use of property by claiming a loss of the "use of lodging facilities; use of swimming facilities; use of parking facilities; and use of ramps and walkways" [Doc. No. 17 at 1, ¶ 2]. Relying upon the Policy and *Marlin Financial & Leasing Corp. v Nationwide Mut. Ins. Co.*, 157 S.W.3d 796 (Tenn. Ct. App. 2004), Smokehouse contends Lovedy's claims for loss of use of property are covered by the Policy [Doc. No. 17 at 1-2], and thus Plaintiff has a duty to defend and indemnify it.

A.    <u>Standard of Review</u>

Plaintiff moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) [Doc. No. 11]. Because Plaintiff's motion refers to the Policy and the complaint in the underlying litigation, the Court construes it as a motion for summary judgment under Fed. R. Civ. P. 56.[3] *See Stanley v. City of Norton*, 124 F. App'x. 305, 309 (6th Cir. 2005) (citing *Weiner, D.P.M. v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997)). Treating the motion as one for summary judgement is consistent with Tennessee law which provides that issues involving coverage under an insurance policy present a question of law amenable to resolution by summary judgment.

_____

[3] When a district court *sua sponte* converts a motion for judgment on the pleadings to a summary judgment motion, it must accord notice and opportunity for further discovery to the parties. *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (citing *Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir. 2001) (*en banc*)). Accordingly, the Court gave notice to the parties it intended to treat Plaintiff's motion as a summary judgment motion under Fed. R. Civ. P. 56 and directed any party seeking to supplement the pleadings and/or engage in further discovery to file a notice on or before October 16, 2006 [Doc. No. 19]. No such notice or objection was filed by any party.

*Keller v. Monumental Life Ins. Co.*, No. E2006-00610-COA-R9CV, 2006 WL 2855095, * 4 (Tenn. Ct. App. Oct. 9, 2006).

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Id.* A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248, 249; *National Satellite Sports*, 253 F.3d at 907.

**B.      Choice of Law**

At the hearing, the parties agreed Tennessee law applies with respect to this matter. Unless an insurance policy contains an enforceable choice of law clause, Tennessee courts will "apply the substantive law of the state in which the policy was issued and delivered." *Standard*

*Fire Ins. Co. v. Chester O'Donley & Associates, Inc.*, 972 S.W.2d 1, 5 (Tenn. Ct. App. 1998).

The Policy states it "is issued and delivered as a surplus line coverage pursuant to the Tennessee insurance statutes" and contains no choice of law clause to the contrary [Doc. No. 1-2 at 2].

Thus, the law of Tennessee governs the construction and interpretation of the Policy. *See U.S. Fidelity & Guar. Co. v. Murray Ohio Mfg. Co.*, 693 F. Supp. 617, 619-20 (M.D. Tenn. 1988), *aff'd*, 875 F.2d 868 (6th Cir. 1989).

### C.     <u>Scope of Coverage and Duty to Defend</u>

The scope of coverage and the insurer's duty to defend are questions of law that can appropriately be resolved by summary judgment when, as here, the relevant facts are undisputed. *American Indem. Co. v. Foy Trailer Rentals, Inc.*, No. W200000397COAR3CV, 2000 WL 1839131, * 2 (Tenn. Ct. App. Nov. 28, 2000) (citing *Standard Fire Ins. Co.*, 972 S.W.2d at 5; *St. Paul Fire and Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 834 (Tenn. 1994)). Issues concerning the coverage provided by a policy of insurance and the insurer's duty to defend under the policy require the interpretation of the policy in light of the claims asserted against the insured. *Standard Fire Ins. Co.*, 972 S.W.2d at 5 (citing *Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996); *American Nat'l Property and Cas. Co. v. Gray*, 803 S.W.2d 693, 695-96 (Tenn. Ct. App. 1990)).

In *St. Paul Fire and Marine Ins. Co.*, the Tennessee Supreme Court stated:

> It is accepted in the overwhelming majority of jurisdictions that the obligation of a liability insurance company to defend an action brought against the insured by a third party is to be determined *solely* by the allegations contained in the complaint in that action. ...Accordingly, if the allegations...are within the risk insured against and there is a potential basis for recovery, then [the insurer] must defend..., regardless of the actual facts or the ultimate grounds on which...liability to the injured parties may be

> predicated. ...In any event, the pleading test for determination of
> the duty to defend is based exclusively on the facts as *alleged*
> rather than on the facts as they actually are.

879 S.W.2d at 835 (quoting *American Policyholders' Ins. Co. v. Cumberland Cold Storage Co.*, 373 A. 2d 247 (Me. 1977)).  An insurer must defend its insured in an action "unless it is plain from the face of the complaint that the allegations fail to state facts that bring the case within or potentially within the policy's coverage." *Drexel*, 933 S.W.2d at 480.  Thus, "[a]n insurer cannot be obliged to defend if there is no legal or factual allegation in the underlying complaint for which the insurer might eventually have to indemnify the insured."  *Commercial Union Assur. Co., PLC v. Oak Park Marina, Inc.*, 198 F.3d 55, 59 (2nd Cir. 1999).

The insurer's duty to defend is distinct from the insurer's obligation to pay valid claims under the policy.  Namely, "[t]he insurer has the duty to defend against even those claims that are without merit."  *Jackson Housing Authority v. Auto-Owners Ins. Co.*, 686 S.W.2d 917, 922 (Tenn. Ct. App. 1984).  Finally, if the allegations in a complaint are ambiguous and some doubt exists as to whether the allegations state a cause of action that the insurer has a duty to defend under the policy, such "doubt should be resolved in favor of the insured."  *State Auto Ins. Companies v. Gordon Const., Inc.*, No. M1999-00785-COA-R3CV, 2001 WL 513884, * 3 (Tenn. Ct. App. May 15, 2001).

### D.  Basic Rules of Construction

An insurance policy is subject to the same basic rules of construction and enforcement as are used for contracts in general.  *American Indem.*, 2001 WL 1839131 at * 3 (citing *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990)).  Absent fraud or mistake, the insurance policy will be interpreted as written, with the terms of the policy being accorded their ordinary and natural

meaning.  *Id.* at * 3 (citing *Allstate Ins. Co. v. Wilson*, 856 S.W.2d 706, 708 (Tenn. Ct. App. 1992); *Drexel*, 933 S.W.2d at 477).  Ambiguous terms, if any, in the policy should be construed "against the insurer and in favor of the insured."  *Id.* (citing *Harrell v. Minnesota Mut. Life Ins. Co.*, 937 S.W.2d 809, 814 (Tenn. 1996)).  An insurance policy "should be construed as a whole and in a reasonable and logical manner."  *Id. (*citing *English v. Virginia Sur. Co.*, 268 S.W.2d 338, 340 (Tenn. 1954)).

### E.  Policy Language at Issue

A certified copy of the Policy is attached to Plaintiff's complaint [Doc. No. 1-2].  The Policy was issued by Plaintiff to the insured, Smokehouse, for the period from April 1, 2005 to April 1, 2006, and describes Smokehouse as a "Motel and Restaurant" [Doc. No. 1-2 at 2].  The Policy provides "Commercial General Liability Coverage" with coverage for "Bodily Injury and Property Damage Liability" [*Id.* at 12].  With regard to such coverage, the Policy states in relevant part:

> a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . . .
>
> b.  This insurance applies to "bodily injury" and "property damage" only if:
>
> > (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
> > (2)  The "bodily injury" or "property damage" occurs during the policy period.

-10-

[*Id.*].  The Policy sets forth an exclusion for "Expected or Intended Injury" stating it does not

apply to:

> "Bodily Injury" or "property damage" expected or intended from
> the standpoint of the insured.

[*Id.*].  The Policy contains a further exclusion for "Damage to Impaired Property or Property Not

Physically Injured" excluding coverage for:

> "Property damage" to "impaired property" or property that has not
> been physically injured, arising out of:
>
> (1)     A defect, deficiency, inadequacy or dangerous
>           condition in "your product" or "your work";...

[*id.* at 14].  The Policy also excludes:

> Damages claimed for any loss, cost or expense incurred by you or
> others for the loss of use, withdrawal, recall, inspection, repair,
> replacement, adjustment, removal or disposal of:
>
> (1) "Your Product";
>
> (2) "Your work"; or
>
> (3) "Impaired property";
>
> if such product, work or property is withdrawn or recalled from the
> market or from use by any person or organization because of a
> known or suspected defect, deficiency, inadequacy or dangerous
> condition in it.

[*Id.* at 15].

The Policy also provides coverage for "Personal and Advertising Injury Liability stating

in relevant part:

> a.     We will pay those sums that the insured becomes
>         legally obligated to pay as damages because of
>         "personal and advertising injury" to which this
>         insurance applies.  We will have the right and duty

> to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

[*id.* at 15].  The Policy excludes certain coverage from "Personal and advertising injury" stating it does not apply to:

> a. "Personal and advertising injury":
> . . .
> (7)    Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

[*id.*].

The Policy sets forth the following relevant definitions:

> 1.    "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.
> . . .
> 3.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
> . . .
> 8.    "Impaired property" means tangible property, other than "your product" or "your work" that cannot be used or is less useful because:
>
> > a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; . . .
> > . . .
> 13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14.    "Personal and advertising injury" means injury including consequential "bodily injury", arising out of one or more of the following offenses:

    a.    False arrest, detention or imprisonment;

    b.    Malicious prosecution;

    c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.    Oral or written publication of material that violates a person's right of privacy;

    f.    The use of another's advertising idea in your "advertisement"; or

    g.    Infringing upon another's copyright, trade dress or slogan in your "advertisement."

. . .

17.    "Property damage" means:

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

[*Id.* at 20-22].

The Policy also contains a combination endorsement which sets forth various relevant exclusions [*id.* at 23]. The endorsement excludes coverage for both "bodily injury' and property damage" and "personal and advertising injury" in an exclusion that states:

> This insurance does not apply to "bodily injury" or "personal injury" arising out of any:
>
> . . .
>
> (3)      Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; . . .
>
> . . .
>
> This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

[*Id.* at 24].

### F.    <u>Interpretation of the Policy</u>

In *American Indem. Co.*, the court set out the manner in which a commercial general liability policy, should be construed stating:

> Commercial general liability policies are designed to protect the insured from losses arising out of business operations. CGL policies are not "all-risk" policies; rather, these policies provide the insured with coverage up to the policy limits for damages for which the insured becomes liable as a result of tort liability to a third party. When facing coverage questions, the essential elements of a CGL policy should be construed in the following order: the declarations, insuring agreement and definitions, exclusions, conditions, and endorsements. The insuring agreement reflects the limits of an insurer's liability. If coverage is not found in the insuring agreement, it will not be found elsewhere in the policy. Exclusions are read in terms of the insuring agreement to which they apply, and they can only decrease coverage.

2000 WL 1839131 at * 3.

Exclusions to a policy should be considered *seriatim*. *Standard Fire Ins. Co.*, 972 S.W.2d at 8. An exclusion ought not to be construed broadly in favor of an insurer, but they ought not to be so narrowly construed as to defeat the purpose of the exclusion. *Id.* Once the insurer shows there is an applicable exclusion, "the burden shifts to the insured to demonstrate that its claim fits within an exception to the exclusion." *Id.*

As noted, a general liability policy does not cover all risks, it is intended to indemnify an insured for "tort liability to a third party." *Id.* at 7. The risk covered by a general liability policy "is the possibility that the insured's product or work will cause bodily injury or damage to property other than the work itself for which the insured may be found liable" *Id.* Issues concerning coverage under an insurance policy require "the interpretation of the insurance policy in light of the claims asserted against the insured." *Allstate Ins. Co. v. Jordan*, 16 S.W.3d 777, 779 (Tenn. Ct. App. 1999). Also as noted, such an issue is a question of law which is particularly amenable to resolution by a summary judgment if the underlying facts are undisputed. *Standard Fire Ins.*, 972 S.W.2d at 5-6.

Smokehouse asserts Lovedy's complaint presents claims of property damage because it alleges economic loss or loss of use of certain facilities.[4] Applying the principles of contract interpretation under Tennessee law to the provisions of the Policy and the claims in the underlying litigation, the Court finds there is no issue of law or fact and Plaintiff is entitled to a

---

[4] The Policy defines "bodily injury" as "injury, sickness or disease sustained by a person" [Doc. No. 1-2 at 20]. In *American Indem. Co.*, 2000 WL 1839131 at * 3, the Tennessee Court of Appeals construed the language of an insurance policy which is identical to the language in the Policy issued to Smokehouse. The Court in *American Indemnity* found that the policy language required "some injury to the body of a physical nature in order to come within the definition of 'bodily injury.'" *Id.* at * 4. At the hearing, the parties conceded no such claim is presented in Lovedy's complaint.

summary judgment on its claims it has no duty to defend or to indemnify Smokehouse with regard to the claims brought by Lovedy.

The Policy provides coverage for "[l]oss of use of tangible property" caused by an "occurrence" [Doc. No. 1-2 at 20-22]. Plaintiff asserts Lovedy has set forth no allegation falling within the meaning of an "occurrence" as defined under the Policy [Doc. No. 11 at 6], which defines an "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions" [Doc. No. 1-2 at 21]. "Under Tennessee law, 'accident' is defined 'as an event that is unforeseen, unexpected or fortuitous.'" *American Cas. Co. of Reading, Pennsylvania v. AmSouth Bank*, No. 00-1338, 2002 WL 1397263, * 3 (W.D. Tenn. Mar. 11, 2002) (quoting *Gassaway v. Travelers Ins. Co.*, 439 S.W.2d 605, 608 (Tenn. 1969)). *See also American Emp. Ins. Co. v. Knox-Tenn. Equip. Co.*, 377 S.W.2d 573, 576 (Tenn. Ct. App. 1963) (accident as the word is "used in insurance policies is an event not reasonably to be foreseen, unexpected and fortuitous").

The Court agrees that Lovedy has not alleged an "occurrence" that is an "accident." In his complaint, Lovedy alleged Smokehouse discriminated and continues to discriminate against him by denying him access to and full enjoyment of the goods, services, facilities and/or benefits available at the motel and restaurant [Doc. No. 1-2 at ¶ 11]. Lovedy further alleged Smokehouse discriminated against him as the result of various access barriers [*id.* at ¶ 14]. Lovedy also alleged the "knowing choice of [Smokehouse] not to make its facilities, programs and services accessible" constitutes an unfair or deceptive act or practice under the TCPA [*id.* at ¶ 37].

In *Shelter Island Inc. v. St. Paul Fire & Marine Ins. Co.*, 32 F. App'x. 243 (9th Cir. 2002), the circuit court upheld the district court's finding that the insurer had not breached its

contractual obligation to defend or to indemnify Shelter Island in lawsuits alleging "Shelter Island maintained restaurant premises which are inaccessible to the disabled in violation" of the ADA. *Id.* at 244. The court held under the applicable California law that the ADA claims against Shelter Island were only covered or potentially covered by the policy if they involved an injury caused by an "occurrence" within the meaning of the policy, which defined an "occurrence" as an "accident" and an "accident" as "an unexpected, unforseen, or undesigned happening or consequence from either a known or unknown cause." *Id.* (quoting *Hogan v. Midland Nat'l Ins. Co.*, 476 P.2d 825, 282 (Cal. 1970)). The court held:

> Shelter Island's maintenance of restaurant premises which are not accessible to the disabled in violation of the ADA does not constitute an "accident" as that term has been defined by California law. Although Shelter Island may not have intended to harm the plaintiffs, Shelter Island chose to maintain restaurant premises that are inaccessible to the disabled . . . As the district court noted, "a restaurant's chosen layout is not an accident."

*Id.* at 245.

The definition of "accident" under California law is substantially similar to the definition of "accident" under Tennessee law. Just as with Shelter Island's restaurant premises, the layout of the premises at the Smokehouse was not an accident. Smokehouse may not have intended to allegedly discriminate against Lovedy based upon his disability, but Lovedy alleges Smokehouse has "facility and program access barriers" within its public accommodations [Doc. No. 1-3 at ¶ 13]. Lovedy also alleges Smokehouse failed to remove these barriers as required by the ADA and its implementing regulations [*id.* at ¶ 16]. The layout of the Smokehouse cannot be termed an "accident" as defined under Tennessee law, nor can the failure to remove certain architectural barriers be termed an "accident" under Tennessee law. Rather, the layout of the Smokehouse,

including any barriers, was intentional. Thus, Lovedy's complaint in the underlying litigation alleges the actions of Smokehouse were intentional, not accidental.

Relying on *Westfield Ins. Co. v. Tech. Dry, Inc.*, 336 F.3d 503 (6th Cir. 2006), Smokehouse contends this Court should find an occurrence sufficient to trigger coverage under the Policy. The decision in *Westfield* is distinguishable from this case. In *Westfield*, under the law of Kentucky, the court held the term "occurrence" was to be broadly and liberally construed in favor of finding coverage under the policy. *Id.* at 510. The issue in *Westfield* was "whether [the] negligent hiring and retention of an employee can constitute an 'occurrence' within the context of a general liability policy." *Id.* at 508. Not only did *Westfield* not decide this issue under Tennessee law, but allegations of negligent hiring and retention are considerably different than the allegations at issue here.

*Marlin Financial*, which is likewise relied on by the Smokehouse, is also distinguishable. In *Marlin Financial*, the underlying action involved a claim for "loss of use of tangible property," specifically, the loss of use of boat racks, floating docks and a dry storage building at a bankrupt marina. 157 S.W.3d 796. The lessor of the boat racks, storage building and floating docks in *Marlin Financial* sought a declaratory judgment that its insurer breached the policy by failing to defend and indemnify it in connection with negligence claims asserted by the bank which financed the leases. The "property damage" provision of the policy in *Martin Financial* contained a provision identical to the relevant provision in the Policy that "property damage" includes "[l]oss of use of tangible property that is not physically injured." *Id.* at 804. The court held that, because the policy had no definition of the words "loss of use," when it accorded those words their "usual, natural and ordinary meaning," such "loss of use" would include the

"deprivation of the ability to put the boat racks, the missing floating dock, and the dry storage building into service or apply them for a purpose."  *Id.* at 809-10.  However, the court in *Marlin Financial* never discussed whether the alleged negligence constituted an "occurrence" as defined by the policy or whether the claims fell within any exclusion such as the exclusion for "intentional" action on the part of the insured.

The Policy also excludes coverage for "property damage" expected or intended from the standpoint of the insured [Doc. No. 1-2 at 12, 23].  Under Tennessee law, claims for willful violations of the TCPA are not covered under a policy which excludes bodily injury or property damage intended from the standpoint of the insured.  *Miele v. Zurich U.S.,* 98 S.W.3d 670, 673-74 (Tenn. Ct. App. 2002).  *See also I. Appel Corp. v. St. Paul Fire & Marine Ins. Co., Inc.*, 930 S.W.2d 550, 552-53(Tenn. Ct. App. 1996) ( claims for intentional infliction of emotional distress and for retaliatory discharge are intentional causes of action and are not covered under a policy which excludes claims for bodily injury and property damage intended by the insured).

With respect to Lovedy's claims allegedly based upon the Smokehouse website, the Court finds the claims do not fall within the definition of "personal and advertising injury" set forth in the Policy.  The Policy explicitly excludes "personal and advertising injury" which arises "out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement.'"  [Doc. No. 1-2 at 15].  Thus, coverage for any claims make by Smokehouse on its website concerning its facilities falls within this exclusion.  Therefore, the Court also concludes Plaintiff has no duty to defend or to indemnify Smokehouse with regard to such claims.

Lovedy's complaint also seeks an injunction directing Smokehouse to alter its property to provide Lovedy with full access to the goods, services, facilities, and privileges offered at Smokehouse pursuant to the ADA and its implementing regulations. As noted, the injuries alleged by Lovedy do not arise from an "occurrence" as defined by the Policy. In addition, to the extent Smokehouse would seek compensation from Plaintiff under the Policy for the cost of repairs to bring its facility into compliance with the ADA and its regulations, such coverage is explicitly excluded under the Policy. The Policy, issued to Smokehouse as a motel and restaurant, excludes coverage for property damage to property that has not been physically injured arising out of a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work" [Doc. No. 1-2 at 14, ¶ 2(m)]. The Policy also excludes damages for "any loss, cost or expense incurred by you or others for the...inspection, repair, replacement, adjustment, removal or disposal of 'your product.'" [*Id.* at 15, ¶ 2(n)]. The Policy further excludes coverage for property damage arising out of the acts or omissions of independent contractors working on behalf of Smokehouse. [*Id.* at 29]. Thus, to the extent Smokehouse would seek reimbursement for the costs of any repairs, replacement or removal of the facility barriers and/or architectural barriers alleged to be present on its premises in order to bring its premises into compliance with the ADA, such costs are explicitly excluded under the Policy.

Accordingly, the Court concludes there is no coverage under the Policy issued by Plaintiff to Smokehouse for any of the claims asserted by Lovedy in the underlying litigation as a matter of law. Therefore, pursuant to 28 U.S.C. § 2201, the Court **DECLARES** Plaintiff has no duty to indemnify and no duty to defend Smokehouse against any of the claims asserted by

Lovedy in the underlying litigation, and Plaintiff's motion for a summary judgment [Doc. No. 11] is **GRANTED**.

## V.      Other Relief

In its complaint for a declaratory judgment, Plaintiff, in addition to a declaratory judgment  seeks "any and all further relief to which [Plaintiff] may be entitled" [Doc. No. 1-1 at 6].  In its memorandum in support of  judgment on the pleadings, Plaintiff states it has provided Smokehouse "with a defense to the underlying lawsuit under a reservation of rights" [Doc. No. 11], but it does not address relief other than a judgment declaring it has no duty to defend or indemnify Smokehouse in the underlying litigation.  Based upon Plaintiff's pleadings and the current state of the record, it is not clear what other relief, if any, Plaintiff seeks.  Accordingly, it is further **ORDERED** that on or before **Friday, January 5, 2007**, Plaintiff shall file a motion or further pleading with this Court specifying in detail the additional relief, if any, it seeks in this declaratory judgment.

## VI.     Conclusion

For the reasons set forth in detail above:

(1)      Jurisdiction over Plaintiff's declaratory judgment action is

**ACCEPTED** under 28 U.S.C. § 2201;

(2)      Plaintiff's motion for a summary judgment [Doc. No. 11] **is**

**GRANTED**.  Pursuant to 28 U.S.C. § 2201, the Court

**DECLARES** Plaintiff has no duty to defend or to indemnify

Smokehouse with regard to the claims of Lovedy in the underlying

 litigation under the Policy issued by Plaintiff to Smokehouse; and

-21-

(3)     On or before **Friday, January 5, 2007**, Plaintiff shall file

        appropriate pleading(s), specifying in detail the additional relief, if

        any, it seeks in this action.

SO ORDERED.

ENTER

                                    s/*Susan K. Lee*
                                    _____
                                    SUSAN K. LEE
                                    UNITED STATES MAGISTRATE JUDGE